**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ILLINOIS – BENTON DIVISION**

| | | |
|---|---|---|
| JANE DOE, Individually, and<br>on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEACONESS ILLINOIS UNION COUNTY HOSPITAL D/B/A DEACONESS ILLINOIS UNION COUNTY D/B/A UNION COUNTY HOSPITAL,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:24-cv-02284-NJR<br><br>The Honorable Nancy J. Rosenstengel, Judge |

**MEMORANDUM IN SUPPORT OF DEFENDANT DEACONESS ILLINOIS UNION COUNTY'S RULE 12(B)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........ **1**

**LAW AND ARGUMENT** ........ **3**

**I. STANDARD OF REVIEW.** ........ **3**

**II. THE COURT SHOULD DISMISS DOE'S ILLINOIS STATE LAW CLAIMS UNDER RULE 12(B)(6).** ........ **4**

A. DOE HAS NOT ADEQUATELY ALLEGED ACTUAL DAMAGES FOR HER NEGLIGENCE AND CONTRACT CLAIMS. ........ 4

B. DOE'S REMAINING ILLINOIS STATE LAW CLAIMS LIKEWISE FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER RULE 12(B)(6). ........ 5

*1. Doe's claimed invasion of privacy injury results from a disclosure, not an intrusion.* ........ *6*

*2. Doe's bailment claim should likewise be dismissed.* ........ *7*

*3. Doe has failed to adequately allege her unjust enrichment claim.* ........ *8*

*4. Doe fails to allege a cause of action under the Illinois Eavesdropping Act.* ........ *8*

**III. DOE ALSO FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER FEDERAL LAW** ........ **10**

A. DOE CANNOT STATE A CLAIM BASED ON AN ALLEGED INTERCEPTION AGAINST UNION COUNTY HOSPITAL UNDER THE FEDERAL WIRETAP ACT (COUNT IX). ........ 10

B. UNION COUNTY HOSPITAL'S WEBSITE IS NOT AN ELECTRONIC COMMUNICATIONS SERVICE FOR PURPOSES OF THE WIRETAP AND STORED COMMUNICATIONS ACTS (COUNTS X AND XI). ........ 14

C. DOE ALSO FAILS TO PLEAD THE BASIC ELEMENTS FOR HER COMPUTER FRAUD AND ABUSE ACT CLAIM (COUNT XII). ........ 16

*1. Doe has not alleged Union County Hospital exceeded authorized access to her computer and obtained information thereby.* ........ *16*

*2. Doe has not alleged statutory "loss" to state a private civil Computer Fraud and Abuse Act claim.* ........ *18*

**CONCLUSION** ........ **20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akers v. Costco Wholesale Corp.*,
631 F. Supp. 3d 625 (S.D. Ill. 2023)....................3

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. Nov. 9, 2018)....................10

*American Hospital Association v. Becerra*,
--- F. Supp. 3d ----, 2024 WL 3075865 (N.D. Tex. June 20, 2024)....................14

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016)....................6, 8

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
730 F. Supp. 2d 1174 (N.D. Cal. 2010)....................18, 19

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
2021 WL 3173736 (S.D.N.Y. Jul. 26, 2021)....................16

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................11, 12

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018)....................13

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019)....................3

*Del Vecchio v. Amazon.com Inc.*,
2011 WL 6325910 (W.D. Wash. Dec. 1, 2011)....................19

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995)....................12

*Doe v. Upperline Health*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024)....................2, 5

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................12, 13

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022)....................16

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)......11

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)......12

*Hartley v. University of Chicago Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024)......13

*Hartley v. University of Chicago Medical Center*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)......6

*In re Illinois Bell Telephone Link-Up II*,
2013 IL App (1st) 113349......4

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005)......15

*Jurgens v. Build.com*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017)......10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)......12

*Kirby v. Chicago City Bank & Tr. Co.*,
82 Ill. App. 3d 1113 (1980)......7

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)......6

*Kurowski v. Rush System for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)......6, 9

*Kurowski v. Rush System for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)......13

*Kurowski v. Rush System for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)......5, 13

*Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*,
2018 IL App (1st) 163351......8

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011)......15

*In re Mondelez Data Breach Litig.*,
2024 WL 2817489 (N.D. Ill. June 3, 2024)......7

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ........ 8

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ........ 8

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ........ 10

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 12

*Priority Payment Systems, LLC v. Intrend Software Solutions*,
2016 WL 8809877 (N.D. Ga. Nov. 28, 2016) ........ 16

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. May 21, 2021) ........ 12

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ........ 2, 5

*Santoro v. Tower Health*,
2024 WL 4771398 (E.D. Pa. Nov. 13, 2024) ........ 2, 5

*Shehade v. Gerson*,
148 Ill. App. 3d 1026 (1st Dist. 1986) ........ 4

*Sweet v. BJC Health Sys.*,
2021 WL 2661569 (S.D. Ill. June 29, 2021) ........ 7

*T.D. v. Piedmont Healthcare*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ........ 2, 5

*TAS Distributing Co. v. Cummins Engine Co., Inc.*,
491 F.3d 625 (7th Cir. 2007) ........ 4

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ........ 6

*Van Buren v. United States*,
141 S. Ct. 1648 (2021) ........ 16, 17, 19

*Volling v. Antioch Rescue Squad*,
2012 WL 6021553 (N.D. Ill. Dec. 4, 2012) ........ 4

*Williams v. TMC Health*,
2024 WL 4364150 (D. Az. Sept. 30, 2024) ........ 13

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012) ....................4

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) ....................9

**Statutes & Other Authorities**

720 ILCS 5/14-1 ....................8

720 ILCS 5/14-2 ....................9

42 U.S.C.A. § 262 ....................20

18 U.S.C. § 1030 ....................17, 18, 19, 20

18 U.S.C. § 2510 ....................15

18 U.S.C. § 2511 ....................9, 10, 11, 12

18 U.S.C. § 2711 ....................15

FED. R. CIV. PRO. RULE 12(B)(6) .................... *passim*

## INTRODUCTION

Defendant Union County Hospital is a 25-bed hospital located in Anna, Illinois. (Dkt. # 1, Compl. ¶ 39.) Union County Hospital has a website, www.unioncountyhospital.com (now located at https://deaconessillinoisunioncounty.com/), through which Deaconess Illinois Union County provides information to the public—patient and non-patient alike—about the public services that Union County Hospital provides. (*Id.*, ¶¶ 10, 45, 130; *see also, e.g., id.*, ¶¶ 133-136 (emergency room information); *id.*, ¶¶ 137-143 (provider information); *id.*, ¶¶ 144-47 (hospital admissions information).)

Anyone can visit this website to search for information at any time, whether for their own health or not. For example, an individual looking for information on a potential knee replacement can find that information here: https://deaconessillinoisunioncounty.com/knee-replacement/.

Deaconess Illinois Union County does not charge anything to use the website. There is no requirement that anyone be a Union County Hospital patient to visit the site either. Nor is named plaintiff Jane Doe's complaint that any of the medical information on the website was in any way wrong, or caused her to suffer some physical injury in some way.

Rather, Doe's complaint is that Union County Hospital used digital analytical tools on this public website, in order to improve how the website functioned. (Dkt. # 1, Compl. ¶¶ 74-84.) This includes digital analytical tools that were used for the alleged purpose of digital marketing, including most prominently the "Meta Pixel." (*Id.*, ¶¶ 15-16, 20, 46, 56-57.)

Doe alleges these analytics tools caused certain information regarding her computer device—including the device's Internet protocol address and Internet "cookies"—to be sent to Facebook and Google, among other third parties, as Doe visited the Union County Hospital site. (*Id.*, ¶¶ 56, 163-166.) From these disclosures, Doe in turn alleges that these third parties could in

fact deduce who she was. Doe does not allege that any specific person at Facebook or Google actually did this, and from there posted her information online. Instead, Doe alleges as her injury that she subsequently received an advertisement in her Facebook feed. (*Id.*, ¶ 177.)

Doe's complaint should be dismissed in its entirety under Rule 12(b)(6), in accord with the growing trend for these website privacy cases. *See T.D. v. Piedmont Healthcare*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) (granting motion to dismiss the same basic website privacy complaint in its entirety under Rule 12(b)(6); noting: "Cases like this have sprouted like weeds in recent years."), *reconsideration denied* Opin. & Ord., Case No. 1:23-cv-05416-TWT, Dkt. # 51 (N.D. Ga. Dec. 10, 2024); *Doe v. Upperline Health*, 2024 WL 4953503, at *2 (S.D. Ind. Sept. 24, 2024) (same; holding "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA]—information that unequivocally provides a window into an individual's personal medical history.") (quoting *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018)); *Santoro v. Tower Health*, 2024 WL 1773371, at *5 (E.D. Pa. Apr. 24, 2024) (same; "Summing up, we hold that Mr. Santoro's second amended complaint fails to state a claim against Tower Health."), *reconsideration denied* 2024 WL 4771398, at *4 (E.D. Pa. Nov. 13, 2024).

This is so here for each of the following reasons:

1. Illinois law requires Doe to plead actual damages in order to state Doe's claims for negligence, negligence *per se*, breach of express contract and breach of implied contract, and Doe has not met that pleading requirement here.

2. Doe has not alleged the basic elements for her invasion of privacy by alleged intrusion upon seclusion claim, or for her bailment, unjust enrichment and Illinois Eavesdropping Act claims under Illinois law.

3. It is not unlawful for Union County Hospital to intercept Union County Hospital's own communications under the federal Wiretap Act, and the tortious or criminal conduct exception to the statute's one-party consent rule does not apply based on Doe's allegations of alleged improper marketing disclosures.
4. Union County Hospital's public website is not an electronic communications service, as that term is defined by federal law, under either the federal Wiretap Act or the federal Stored Communications Act.
5. Doe has not alleged the statutory loss requirements for asserting a civil claim under the Computer Fraud and Abuse Act, nor that Union County Hospital exceeded authorized access to her computer and thereby obtained information under the statute.

Accordingly, for these and the other reasons set forth below, Doe's complaint should be dismissed with prejudice in its entirety under Rule 12(b)(6).

**LAW AND ARGUMENT**

**I. STANDARD OF REVIEW.**

"A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) 'tests whether the complaint states a claim on which relief may be granted.'" *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 631 (S.D. Ill. 2023) (quoting *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012)).

To survive the motion, the complaint "must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests, and (2) contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (quotations omitted).

"The complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. THE COURT SHOULD DISMISS DOE'S ILLINOIS STATE LAW CLAIMS UNDER RULE 12(B)(6).

The Court should dismiss Doe's Illinois state law claims for two basic reasons. First, on her negligence and contract claims, for failure to allege actual damages. And second, on Doe's bailment, intrusion upon seclusion, and Illinois Eavesdropping Act claims, for failure to allege their basic elements.

### A. Doe Has Not Adequately Alleged Actual Damages for Her Negligence and Contract Claims.

"Illinois law requires 'legally cognizable *present* injury or damage' to sustain a negligence claim." *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703 (N.D. Ill. 2012) (quoting *Yu v. Int'l Bus. Machs. Corp*., 314 Ill.App.3d 892, 897 (2000) (emphasis in original)); *see also, e.g., Shehade v. Gerson*, 148 Ill. App. 3d 1026, 1031 (1st Dist. 1986) ("damages are an essential element of every negligence action"); *Volling v. Antioch Rescue Squad*, 2012 WL 6021553, at *12 (N.D. Ill. Dec. 4, 2012).

The same holds true for Doe's contract claims. As the Seventh Circuit has held: "Illinois law is clear that, to state a claim for breach of contract, one must be able to prove actual damage." *TAS Distributing Co. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 n. 6 (7th Cir. 2007). Thus also, "[m]erely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *Id.* at 631; *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19 (same).

Doe has not adequately alleged actual damages in order to state her negligence or breach of contract claims here. (Dkt. # 1, Compl. ¶¶ 267-277 (negligence); *id.*, ¶¶ 278-290 (negligence *per se*); *id.*, ¶¶ 303-313 (express contract); *id.*, ¶¶ 314-325 (implied contract).) To meet this requirement on each of these claims, Doe conclusory alleges a variety of damages that putative class members might have suffered in her complaint. (*See id.*, ¶¶ 274, 287, 310, 324.)

This pleading tactic is not sufficient. As one court recently held in analyzing these same allegations: "These damages are alleged in the identical conclusory fashion for each of the identified Plaintiffs." *Piedmont Healthcare*, 2024 WL 3972984, at *3. "No facts are alleged that any of the Plaintiffs have actually suffered any of these damages." *Id.* "No facts are alleged that would explain how receiving targeted advertisements from Facebook and Piedmont would plausibly cause any of the Plaintiffs to suffer these damages." *Id.* "This is not a case where the Plaintiffs' personal information was stolen by criminal hackers with malicious intent." *Id.* "The Plaintiffs received targeted advertisements because they are Facebook users and have Facebook IDs." *Id.* "The Court finds the Plaintiffs' damages theories untenable." *Id.*

The *Piedmont Healthcare* court is not alone in making this holding. *See also, e.g., Tower Health*, 2024 WL 1773371, at *6 (dismissing negligence claim; "without specific allegations about what information plaintiffs searched on the website (and the consequences of those searches), plaintiffs have not adequately plead causation"); *Kurowski v. Rush System for Health*, 2024 WL 3455020, at *7 (N.D. Ill. July 18, 2024) (Illinois breach of contract claim; "As the Court has previously explained, Kurowski has not plausibly alleged that she suffered actual damage.") (citing *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 845-847 (N.D. Ill. 2023)); *compare Upperline Health*, 2024 WL 4953503, at *2-3 (dismissing alleged website privacy complaint in its entirety on all counts; "Given the dearth of information specific to Plaintiff as to what was specifically disclosed to Facebook that would plausibly be in violation of HIPAA, the court must dismiss Plaintiffs' Amended Complaint.").

### B. Doe's Remaining Illinois State Law Claims Likewise Fail to State a Claim for Which Relief Can Be Granted under Rule 12(b)(6).

In addition to Doe's negligence and contract claims, Doe also asserts four additional Illinois state law claims in her complaint: for alleged invasion of privacy by intrusion upon

seclusion (Dkt. # 1, Compl. ¶¶ 291-302), bailment (*id.*, ¶¶ 334-340), unjust enrichment (*id.*, ¶¶ 326-333), and under the Illinois Eavesdropping Act (*id.*, ¶¶ 341-364). These claims should each be dismissed for the reasons set forth in this section.

1. *Doe's claimed invasion of privacy injury results from a disclosure, not an intrusion.*

Doe's alleged invasion of privacy by intrusion upon seclusion should be dismissed for a simple reason: the alleged privacy harm on the claim is based on a disclosure, not an intrusion. (Dkt. # 1, Compl., pg. 37 ("**UCH Disclosed Patients' Identifying Information**") (emphasis in original)); *id.* at ¶ 294 (alleging Union County Hospital allegedly invaded Doe's privacy because "Defendant *disclosed* Plaintiff's and the Class Members' Private Information and confidential communications to Facebook") (emphasis added).)

Every court to address the question has squarely held this is not a claim for intrusion upon seclusion under Illinois law. *See Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 943-44 (N.D. Ill. 2023); *Kurowski v. Rush System for Health* (*Kurowski II*), 683 F. Supp. 3d 836, 848-49 (N.D. Ill. 2023) (same; "The harm caused by Rush, if any, continues to be its alleged disclosure of the Kurowski's private health information."); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, at *2-3 (N.D. Ill. Nov. 8, 2023) (same; "Since Plaintiff is complaining about what she thinks UCMC told Facebook, her complaints are with the publication, and not any intrusion").

As the Seventh Circuit has likewise held in interpreting Illinois law: "[A] plaintiff fails to state a claim for invaded seclusion if the harm flows from the publication rather than the intrusion." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *Angelo v. Moriarty*, 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016) (same).

2. *Doe's bailment claim should likewise be dismissed.*

"A bailment is 'the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims them." *Kirby v. Chicago City Bank & Tr. Co.*, 82 Ill. App. 3d 1113, 1116 (1980) (quoting *Knapp, Stout & Co. v. McCaffrey* (1899), 178 Ill. 107, 52 N.E. 898, aff'd, 177 U.S. 638 (1900)).

As such, "[a]mong the necessary elements of a bailment are an agreement by the bailor to transfer or deliver and the bailee to accept exclusive possession of goods for a specified purpose, the actual delivery or transfer of exclusive possession of the property of the bailor to the bailee, and acceptance of exclusive possession by the bailee." *Kirby*, 82 Ill. App. 3d at 1116.

Here, Doe cannot allege that Deaconess ever took "exclusive possession" of her "Private Information." Indeed, Illinois courts have held it is impossible for someone or something to have "exclusive possession" of another person's personal information. *See In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *9 (N.D. Ill. June 3, 2024). As the *Mondelez* court succinctly explained: "no one can have "exclusive possession" of another person's personal information." *Id*. at *9.

Doe also cannot allege that she requested her alleged "property" back from Deaconess or that Deaconess failed to return such property. *See Sweet v. BJC Health Sys.*, 2021 WL 2661569, at *8 (S.D. Ill. June 29, 2021). As this Court held in *Sweet*: "Here, Plaintiffs seek to allege that their PHI is the 'property' serving as the basis for the bailment relationship, yet they do not allege that they sought the return of their information or that Defendants failed to return it." *Id.* "Accordingly, they have failed to state a claim for bailment, and Count IX must be dismissed with prejudice." *Id.*

3. *Doe has failed to adequately allege her unjust enrichment claim.*

Count VI of Doe's complaint alleges a claim for unjust enrichment. (Dkt. # 1, Compl. ¶¶ 326-333). Here, Doe has not adequately alleged any detriment she has suffered under Illinois law. *Barrientos v. Fitness Member Services, LLC*, --- F. Supp. 3d ----, 2024 WL 4225957, at *13 (N.D. Ill. Sept. 18, 2024) ("Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust.") (quoting *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).

As one court has held in rejecting the same basic unjust enrichment claim based on the alleged transference of website information: "While we recognize that browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, 13 (S.D.N.Y. Aug. 17, 2016), *aff'd* 684 F. App'x 32, 36 (2d Cir. 2017) ("plaintiffs do not allege that PulsePoint's data collection practices actually deprived them of any opportunity to sell their own personalized information."); *Williams v. TMC Health*, 2024 WL 4364150, at *9 (D. Ariz. Sept. 30, 2024) (same; "the complaint is devoid of allegations indicating Plaintiffs ever intended to profit from their data or even had some other avenue of profiting from their data").

4. *Doe fails to allege a cause of action under the Illinois Eavesdropping Act.*

Counts VIII of Doe's complaint alleges a violation of the Illinois Eavesdropping Act. (Dkt. # 1, Compl. ¶¶ 341-364.) Doe cites the statutory provision outlawing the interception of "private communications" in her complaint. (*Id.*, ¶ 342.)

This allegation is out of place in this case, however. This is so because under 720 ILCS 5/14-1(d), the term "private conversation" is limited to oral communications, which provision defines "private conversation" to mean "any *oral communication* between 2 or more persons."

*Id.* (emphasis added); *see also Angelo v. Moriarty*, 2016 WL 640525, at *3-4 (N.D. Ill. Feb. 8, 2016) (analyzing oral communications provision of the Eavesdropping Act).

As Doe notes, the statute does also apply to "private electronic communications." (Dkt. # 1, Compl. ¶ 346.) *See also* 720 ILCS 5/14-2(a)(5) (prohibiting the use or disclosure of "any information which he or she knows or reasonably should know "was obtained from a private conversation *or* private electronic communication in violation of this Article").

The issue on this second aspect of the claim, however, is that the private electronic communications violation provision of the Illinois Eavesdropping Act sets forth a one-party consent rule. *See* 720 ILCS 5/14-2(a)(3) 720 Ill. Stat. § 5/14-2 (providing that a "person commits eavesdropping when he or she knowingly and intentionally . . . (3) [i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication *to which he or she is not a party*") (emphasis added).

Moreover, unlike with federal law, on a point which will be further addressed below, there is no tortious or criminal conduct exception to this one-party consent for electronic communications under Illinois law. *See Kurowski II*, 683 F. Supp. 3d at 853 ("unlike the federal Wiretap Act, the Illinois statute does not have a criminal or tortious exception to the party exception").

For these reasons, Doe's allegations also fail to state a claim under the Illinois Eavesdropping Act, and Count VIII of Doe's complaint should likewise be dismissed. *See also Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) (dismissing Illinois Eavesdropping Statue claim; "Because Bose was a party to the communications, it cannot be held liable under the Wiretap Act or the Eavesdropping Statute.").

## III. DOE ALSO FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER FEDERAL LAW.

Doe's complaint asserts four claims against Union County Hospital for alleged violations of federal statutes: **(1)** for an alleged violation of section 2511(1) of the federal Wiretap Act (Count IX, Dkt. # 1, Compl. ¶¶ 365-); **(2)** for an alleged violation of section 2511(3)(a) of the federal Wiretap Act (*id.*, Count X, "Unauthorized Divulgence By Electronic Communication Service," ¶¶ 384-396); **(3)** for an alleged violation of section 2702 of the Stored Communications Act (*id.*, Count XI, ¶¶ 397-413); and **(4)** for an alleged violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (*id.*, Count XII, ¶¶ 414-419).

### A. Doe Cannot State a Claim Based on an Alleged Interception Against Union County Hospital under the Federal Wiretap Act (Count IX).

For her first federal Wiretap Act claim, Doe alleges Union County Hospital violated section 2511(1) of the statute in each one of three ways:

(1) by intentionally *intercepting* plaintiffs' electronic communications (Dkt. # 1, Compl. ¶¶ 373-75 (citing 18 U.S.C. § 2511(1)(a));

(2) by intentionally *disclosing* plaintiffs' electronic communications, knowing or having reason to know that the communications were unlawfully intercepted (*id.*, ¶ 376 (citing 18 U.S.C. § 2511(1)(c)); and

(3) by intentionally *using* the contents of plaintiffs' electronic communications, here again knowing or having reason to know that the communications were allegedly, and unlawfully, intercepted (*id.*, ¶ 377 (citing 18 U.S.C. § 2511(1)(d)).

Each one of these three theories requires an actual interception to have occurred to state the claim in the first instance. *See Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) (holding that an "interception is a necessary element for each type of violation") (quoting *Bruce v. McDonald*, 2014 WL 931522, at *2 (M.D. Ala. Mar. 10, 2014)); *Allen v.*

*Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("Since claims under subsection (c) and (d) are predicated on a violation of subsection (a), the Court considers all section 2511 claims together."); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (same).

And here, Congress made it plain that under the Wiretap Act it is not unlawful for a party to intercept its own communications, unless the party was doing so for the expressed purpose of committing a crime or a tort at the time of the recording in question. Specifically, the statute provides as follows:: "It shall *not* be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication*," *unless* "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

Two principles have emerged from the case interpreting this tortious or criminal conduct exception to the statute's one-party consent rule. *First*, the exception applies only where the defendant allegedly committed an alleged criminal or tortious act that is independent from the act of recording itself. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 & n.81 (3d Cir. 2015) (same; "all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits").

*Second*, it is not enough that this secondary conduct might have violated some law; the recording itself must have been made for the specific purpose of harming the plaintiff in particular. As the court held in *Caro*: "[I]t is 'apparent from the context in which [Title XVIII] was enacted that the sort of conduct contemplated by the statute was an interception by a party to

a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed.'" *Id.* (quoting *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971)).

The court thus concluded: "If, *at the moment he hits 'record,'* the offender does not intend to sue the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to use the recording *to harm the other party to the conversation*, a civil cause of action exists under the Wiretap Act." 618 F.3d at 100 (emphasis added); *see also Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious") (emphasis in original, quoting *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999)); *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995) (same).

These holdings apply here. Even at their worst, Doe's allegations show that Union County Hospital did not allegedly "intercept" any of her communications to harm her personally. To the contrary, Doe's unequivocal allegations on this point show that Union County Hospital's purpose was to engage in marketing (Dkt. # 1, Compl. ¶¶ 20, 22, 29, 46, 54-55), which falls outside the ambit of the exception as a matter of law. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (refusing to apply exception where "DoubleClick's purpose has plainly not been to perpetuate torts upon millions of Internet users, but to make money by providing a valued services to commercial Web sites"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. May 21, 2021); *Katz-Lacabe v. Oracle Am., Inc.*, --- F. Supp. 3d ----, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (all holding same).

The rationale for these decisions is straightforward: "Section 2511(2)(d)'s legislative history and case law make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 515; *see also, e.g.*, *TMC Health*, 2024 WL 4364150, at *4 (rejecting allegation that marketing and improving website analytics were sufficient to invoke the exception; "all the facts Plaintiffs alleged regarding Defendant's purpose in intercepting the communications point to one conclusion—a non-criminal, non-tortious purpose."); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (refusing to apply exception in alleged internet tracking case where "Cohen fails to demonstrate that Defendants' primary purpose was to commit a tort. Instead, he claims that Defendants' conduct amounted to a tort.") (emphasis in original).

Respectfully, the decisions going the other way on this point—and allowing a federal Wiretap Act claim to survive under the exception based on an alleged legal violation—are incorrectly decided. *See Kurowski v. Rush System for Health*, 2023 WL 8544084, at *2-3 (N.D. Ill. Dec. 11, 2023) (creating a "HIPAA-exception-to-the-party-exception"); *Hartley v. University of Chicago Med. Ctr.*, 2024 WL 1886909, at *2-3 (N.D. Ill. Apr. 30, 2024) (same).

Even assuming they were not, however, the rationale of these decisions would not apply here. Most basically, as in the initial *Rush* decisions, Doe has not adequately alleged that there is any individually identifiable health information at stake that would be protected by any law. To the contrary, all Doe has alleged are alleged disclosures from Union County Hospital's public website, which is available to the public at large and contains no protected health information. *See Kurowski I*, 659 F. Supp. 3d at 938-39 (refusing to apply the exception because "Kurowski has not alleged sufficient facts, however, to support an inference that Rush disclosed its patients'

individually identifiable health information, at least as that term is defined by the statute"); *Kurowski II*, 683 F. Supp. 3d at 844 (same; "The type of metadata that Kurowski alleges was transmitted via third-party source code does not in the least bit fit into that category.").

Indeed, while Doe's complaint extensively cites to the Department of Health and Human Services' guidance to support her allegations that there has some been some legal violation by Union County Hospital (Dkt. # 1, Compl. ¶¶ 2, 5-8, 198-201, 208-210), that guidance has since been invalidated on this precise point. *See American Hospital Association v. Becerra*, --- F. Supp. 3d ----, 2024 WL 3075865 (N.D. Tex. June 20, 2024). The court held the guidance exceeded the scope of the Department's regulatory authority under HIPAA, as the transfer of an Internet protocol address in combination with information regarding a search for a healthcare condition does not constitute "individually identifiable health information" under Congress's statutory definition for the term. *See* 2024 WL 3075865, at *13, n.7 (collecting cases). As the court concluded: "the closest the Proscribed Combination gets to IIHI is a speculative inference extrapolated from (but unsubstantiated by) collected metadata"; thus also, "[b]ecause the Proscribed Combination facially exceeds HIPAA's unambiguous text," *id.* at *14.

### B. Union County Hospital's Website Is Not an Electronic Communications Service for Purposes of the Wiretap and Stored Communications Acts (Counts X and XI).

Doe next asserts two similar claims under the Wiretap Act and Stored Communications Act. *First*, in Count X, Doe accuses Union County Hospital of violating the following Wiretap Act provision: "a person or entity *providing an electronic communication service to the public* shall not intentionally divulge the contents of any communication . . . while in transmission on that service." (Dkt. # 1, Compl. ¶ 385 (quoting 18 U.S.C. § 2511(3)(a)) (emphasis added).)

*Second*, in Count XI, Doe accuses Union County Hospital of allegedly violating the following provision of the federal Stored Communications Act: "[A] person or entity *providing*

*an electronic communication to the public* shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." (*Id.*, ¶ 398 (quoting 18 U.S.C. § 2702(a)(1) (emphasis added).)

As set forth in the italicized language above, a necessary element for each of these claims is that Union County Hospital "*provided an electronic communication service to the public*." *See* 18 U.S.C. § 2711(1) (emphasis added, providing that "the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section"); 18 U.S.C. § 2510(15) (defining the term "electronic communication service" to mean "any service which provides to users the ability to send or receive wire or electronic communications").

This statutory requirement is not met here. As numerous courts have held, "the provider of an electronic communication service is the provider of the underlying service which transports the data, such as an internet service provider or a telecommunications company whose cables and phone lines carry internet traffic, and not the provider of a product or service which facilitates the data transport." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 523 (N.D. Ill. 2011); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2005) (rejecting the argument Jetblue Passenger Reservation Systems' was an electronic communications service; "companies that provide traditional products and services over the Internet, as opposed to Internet access itself, are not 'electronic communication service' providers within the meaning of the ECPA").

As applied here, Doe's allegations make plain that Union County Hospital is a healthcare provider, not an electronic communications service provider. As Doe alleges: "Headquartered in Anna, Illinois, Defendant is a hospital and community healthcare provider, which purports to work hard every day to be a place of healing, caring and connection for patients and families in

the community we call home." (Dkt. # 1, Compl. ¶ 9; *see also id.*, ¶ 39 ("Defendant is a hospital in Anna, Illinois").) *See also, e.g., Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003-04 (W.D. Wash. 2022) (holding that "[a] company that merely utilizes electronic communications in the conduct of its own business is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *Priority Payment Systems, LLC v. Intrend Software Solutions*, 2016 WL 8809877, at *6 (N.D. Ga. Nov. 28, 2016) (collecting cases; "businesses offering their traditional products and services online through a website are not providing an electronic communications service") (quoting *Dyer v. Northwest Airlines Corp.*, 334 F. Supp. 2d 1196, 1198-99 (D.N.D. 2004)).

**C. Doe Also Fails to Plead the Basic Elements for her Computer Fraud and Abuse Act Claim (Count XII).**

Doe's final federal statutory claim is for an alleged violation of the Computer Fraud and Abuse Act (CFAA). (Dkt. # 1, Compl. pgs. 92-93, ¶¶ 414-75.) This conclusorily pleaded claim is also out of place in this case, under controlling United States Supreme Court precedent, and Doe does not have statutory standing under the statute's private right of action provision in any event.

1. *Doe has not alleged Union County Hospital exceeded authorized access to her computer and obtained information thereby.*

The Computer Fraud and Abuse Act is an anti-hacking statute; it "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021) (quoting 18 U.S.C. § 1030(a)(2)); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *3 (S.D.N.Y. Jul. 26, 2021) ("The CFAA is 'a scheme aimed at preventing the typical consequences of hacking.'") (quotation omitted).

As applied here, Doe does not allege Union County Hospital hacked into her computer devices without authorization. Instead, parroting the statutory language, Doe alleges that Union

County Hospital "exceeded, and continues to exceed," otherwise "*authorized* access to the Plaintiff's and the Class's protected computers," and "obtained information thereby," in alleged "violation of 18 U.S.C. § 1030(a)(2)(C)." (Dkt. # 1, Compl. ¶ 416.)

The Supreme Court's decision in *Van Buren* forecloses this claim. *See* 141 S. Ct. at 1652, 1654. In *Van Buren* the Court interpreted the "exceeds authorized access" provision at length. The Court first noted that the statute defined the term to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* at 1652 (quoting 18 U.S.C. § 1030(e)(6)).

The Court then rejected the government's argument that a police officer had exceeded authorized access to a law enforcement database to which he had legitimate access, even under circumstances where he had accessed the system to download information for a bribe. *Id.* at 1654. In making this holding, the Court narrowly interpreted the exceeding authorized access provision as follows: "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization *but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him*." *Id.* at 1662 (emphasis added).

Under *Van Buren*, the Computer Fraud and Abuse Act simply does not apply here. Doe does not allege Union County Hospital exceeded authorized access to her computer and obtained information thereby. To the contrary, Doe does not allege Union County Hospital obtained information from her computer at all, separate and apart from the initial communication—which Doe affirmatively instituted—between her own web browser and Union County Hospital's website server. (*See, e.g.*, Dkt. # 1, Compl. ¶ 175 (alleging "Plaintiff used UCH's Website and Online Platforms, first in 2014, and last in December 2023, on a frequent basis at least once a week, to facilitate her personal medical care with Defendant and payment for care").)

Doe's Computer Fraud and Abuse Act claim should therefore also be dismissed. *See also AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1183-84 (N.D. Cal. 2010) ("The CFAA is primarily a criminal statute that prohibits the intentional and knowing unauthorized accessing of computers to obtain information or anything of value or to cause damage.").

2. *Doe has not alleged statutory "loss" to state a private civil Computer Fraud and Abuse Act claim.*

Even assuming the statute applied, Doe has not adequately alleged statutory standing to assert her claim under the statute's private right of action provision. *See* 18 U.S.C. § 1030(g). Congress carefully conscribed the cause of action allowed for by this provision as follows: "A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." *Id.*

The statutory subclauses in subsection (c)(4)(A)(i) in turn proscribe these threshold requirements for pleading a private civil claim under the Computer Fraud and Abuse Act:

**(I)** Loss to 1 or more persons during any 1-year period [] aggregating at least $5,000 in value;

**(II)** The modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment or care of 1 or more individuals;

**(III)** Physical injury to any person;

**(IV)** A threat to public health or safety; and

**(V)** Damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

*See* 18 U.S.C. § 1030(g).

Doe's complaint offers two theories for meeting these threshold statutory requirements. (Dkt. # 1, Compl. ¶ 417; *id.* at pg. 92-93, ¶ 74.) *First*, Doe alleges an intangible "loss" in the form of their "personally identifiable information"; as Doe puts it, the claimed "secret transmission of Plaintiff's and the Class Members' Private Information," which were "never intended for public consumption" (*id.*, ¶ 417).

This intangible harm is not the type of loss contemplated by the statute. Rather, the term "loss" is defined in financial terms: "the term 'loss' means *any reasonable cost* to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense," as well as "any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added).

As the Supreme Court thus held in *Van Buren*: "The statutory definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting 'damage' and 'loss' in this way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" 141 S. Ct. at 1659-1660 (quoting *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 757 (6th Cir. 2020)); *AtPac, Inc.*, 730 F. Supp. 2d at 1184 (same; "[t]o allege a loss under the CFAA, plaintiffs must identity impairment of or damage to the computer system that was accessed without authorization"); *Del Vecchio v. Amazon.com Inc.*, 2011 WL 6325910, at *4 (W.D. Wash. Dec. 1, 2011) (same; "not one of the Plaintiffs alleges that he or she discerned any difference whatsoever in the performance of his or her computer while visiting Defendant's site, let alone any diminution from which the Court could plausibly infer the necessary damages").

*Second*, Doe claims Union County Hospital's alleged misconduct in disclosing her website browsing history to Facebook and Google "constitutes 'a threat to public health or safety' under 18 U.S.C. § 1030(c)(4)(A)(i)(IV)," due to the "private and personally identifiable data and content of Plaintiff's and Class Members' Website Communications being made available to Defendant, Facebook, and/or other third parties without adequate legal privacy protections." (Dkt. # 1, Compl. at pgs. 92-93, ¶ 74.)

With all respect to Ms. Doe, this is not the type of threat to public health or safety contemplated by the statute. *Compare* 42 U.S.C.A. § 262a (West 2002) (requiring the Secretary of Health and Human Services to provide public notice when the release of "certain biological agents and toxins" pose "a threat to public safety").

**CONCLUSION**

The Court should dismiss Doe's complaint with prejudice under Rule 12(b)(6).

Dated: December 23, 2024

Respectfully submitted,

By: <u>/s/ *Paul G. Karlsgodt*</u>
Paul G. Karlsgodt
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 764-4013
pkarlsgodt@bakerlaw.com

David Carney (*application to Southern District of Illinois forthcoming)*
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 861-7634
dcarney@bakerlaw.com

*Counsel for the Deaconess Illinois Union County*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 23, 2024, a true and correct copy of the foregoing *Memorandum in Support of Rule 12(b)(6) Motion to Dismiss* was served on counsel of record via the Court's electronic filing system.

*/s/ Paul G. Karlsgodt*
*Counsel for defendant Deaconess Illinois Union County*