**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

| | | |
|---|---|---|
| **JANE DOE, Individually, and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | **Case No. 3:24-cv-2284** |
| **v.** | ) | **Judge Nancy J. Rosenstengel** |
| **DEACONESS ILLINOIS UNION COUNTY HOSPITAL, INC. D/B/A DEACONESS ILLINOIS UNION COUNTY D/B/A UNION COUNTY HOSPITAL** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 6

A. Plaintiff Adequately Alleges Damages for her Negligence and Contract Claims .......... 6

B. Plaintiff has Sufficiently Alleged Invasion of Privacy .......... 8

C. Plaintiff Has Sufficiently Pleaded Bailment .......... 10

D. Plaintiff States a Claim for Unjust Enrichment .......... 12

E. Plaintiff sufficiently alleged a violation of the Electronic Communications Privacy Act 13

i. Plaintiff sufficiently alleged unlawful interception; the crime-tort exception applies .......... 13

ii. Plaintiff sufficiently alleged intercepted contents .......... 15

iii. Plaintiff Sufficiently Alleged Violations of the Electronic Communications Service Act and the Stored Communications Act .......... 16

F. Defendant Fails to Meet its Burden to Show Union County Hospital's Website is Not an Electronic Communications Service for Purposes of Plaintiffs' ECPA Claims .......... 17

G. Plaintiff Sufficiently Pleaded the Elements of her Computer Fraud and Abuse Claim .......... 18

i. Plaintiff Alleged Defendant Exceeded Authorized Access to Her Computer and Obtained Information Thereby .......... 18

ii. Plaintiff has Alleged Statutory "Loss" to State a Private Civil CFAA claim .......... 20

V. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ....................2, 7, 17, 18

*ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214 (D. Utah Mar. 3, 2022) ....................19

*ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596 (N.D. Ill. July 26, 2023) ....................19

*Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*, 793 F. Supp. 2d 1302 (N.D. Ga. 2011) ....................16

*Anaya v. Birck*, 2024 WL 2209345 (N.D. Ill. May 16, 2024) ....................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................6

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....................6

*Cooper v. Mount Sinai Health Sys., Inc.*, No. 23 CIV. 9485 (PAE), 2024 WL 3586357 (S.D.N.Y. July 30, 2024) ....................12

*Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077 (2007) ....................1

*Doe v. Coffee Reg'l Med. Ctr., Inc.,* No SUV2023000627, 2024 Ga. Super. LEXIS 602 (Ga. Super. Ct. Sept. 6, 2024)....................12

*Fidlar Techs. v. LPS Real Estate Data Sols.*, 2013 U.S. Dist. LEXIS 159929 (C.D. Ill. Nov. 8, 2013)....................20

*Flores v. Aon Corp.*, 2023 IL App (1st) 230140....................2, 8, 10, 12

*In re Gallagher*, 631 F. Supp. 3d 573....................7

*Geisberger v. Willuhn*, 72 Ill. App. 3d 435 (1979)....................7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125 (3d Cir. 2015) ....................13

*Hartley v. Univ. of Chicago Med. Ctr.*, 2023 U.S. Dist. LEXIS 200619 (N.D. Ill. Nov. 8, 2023) ....................7, 8, 9, 14

*Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) .................... *passim*

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012)....................6

*Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024).....12, 15

*Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023).....2

*Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024)..... *passim*

*Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023).....2, 9

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023).....2, 8, 9, 15

*Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023).....2, 9

*Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (2012).....8

*Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U.....2

*M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024).....9

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013).....6

*McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024).....9, 10

*Mekhail v. N. Mem'l Health Care*, 2024 U.S. Dist. LEXIS 55880 (D. Minn. Mar. 28, 2024).....14

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. Dec. 22, 2022).....15

*In re Mondelez Data Breach Litig.*, 2024 WL 2817489 (N.D. Ill. June 3, 2024).....11

*Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972 (D. Idaho Sept. 3, 2024).....19

*Posner v. Davis*, 76 Ill. App. 3d 638 (1979).....7

*Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024).....14

*Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024).....2, 7, 17, 18

*Sweet v. BJC Health Sys.*, 2021 WL 2661569 (S.D. Ill. June 29, 2021).....12

*T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984 (N.D. Ga. 2024).....7

*United States v. Thompson*, 2022 WL 834026 (W.D. Wash. Mar. 21, 2022), *reconsideration denied*, 2022 WL 1719221 (W.D. Wash. May 27, 2022).....19

*Wright v. Autohaus Fortense, Inc.*, 129 Ill. App. 3d 422, 472 N.E.2d 593 (1984)........................11

**Statutes**

18 U.S.C. § 2511(3)(a).........................................................................................16, 17

Computer Fraud and Abuse Act, 18 U.S.C. § 1030..........................................................18, 19, 20

Electronic Communications Privacy Act...................................................................13, 16, 17, 18

*Electronic Communications Service Act and the Stored Communications Act*.............................16

Federal Wiretap Act .........................................................................................................14

HIPAA .........................................................................................................13, 14

Stored Communications Act .........................................................................................17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................6

Plaintiff, JANE DOE, individually, and on behalf of all others similarly situated, for his Response in Opposition to the Motion to Dismiss filed by Defendant, DEACONESS ILLINOIS UNION COUNTY HOSPITAL D/B/A DEACONESS ILLINOIS UNION COUNTY d/b/a UNION COUNTY HOSPITAL ("Defendant" or "UCH"), respectfully states as follows:

## I. INTRODUCTION

Defendant purposefully installed third-party trackers on its website, https://www.unioncountyhospital.com/ (the "Website")[1] including the Meta Pixel. When patients like Plaintiff Jane Doe ("Plaintiff" or "Juenger") and the proposed Class Members visited UCH's Website, these trackers recorded patients' confidential health communications and private health information, and then disclosed this information in combination with identifying information (such as IP addresses or identifying cookies) to third parties, like Facebook and Google, without these patients' consent or knowledge.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiff's personal, private, confidential health information to third parties. Illinois courts, Illinois federal courts, the Seventh Circuit, and courts across the country have upheld claims exactly like those asserted here. *See, e.g., Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's motion for judgment on

[1] At some point, on information and belief in 2024, Defendant's Website began to redirect to https://deaconessillinoisunioncounty.com/

the pleadings and allowing claims to proceed); *Kurowski v. Rush Sys. for Health*, , 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same). *See also* Exhibit A.

Defendant fails to meet its burden to show that, when the facts in the Complaint are taken as true and the applicable standard, Plaintiff cannot prevail on her causes of action as a matter of law. UCH's Motion to Dismiss must be denied.

## II. FACTUAL BACKGROUND

Headquartered in Anna, Illinois, Defendant is a hospital and "community healthcare provider," "a 25-bed facility with complete inpatient and outpatient care including emergency, medical and surgical services."[2] Compl. ¶ 39. UCH is part of Deaconess Health System, which, "operates a total of 655 beds at two acute care campuses (Midtown and Gateway) located in Evansville, Methodist Hospital in Henderson and Union County and Gibson General acquired in fiscal 2020, a 58-bed psychiatric hospital (Cross Pointe), a 74-bed women's hospital and a 98-bed rehabilitation hospital (Encompass Health), and a large and expansive clinic." Defendant's annual

[2] https://www.unioncountyhospital.com/union-county-hospital/aboutus (July 5, 2022)

revenue in 2022 approximated $1.603 billion. *Id.* ¶¶ 42-43. UCH encouraged patients such as Plaintiff and the proposed Class Members to use its Website, along with its various web-based tools and services (collectively, the "Online Platforms"), to learn about UCH on its website homepage, to find and research medical services,[3] to access a patient portal,[4] to search for medical providers,[5] to contact UCH,[6] to request medical records,[7] to pay bills,[8] to learn about the costs of medical services and obtain pricing estimates,[9] and more. *Id.* ¶ 44.

In its privacy policies, UCH promises patients that it will maintain the confidentiality of their personal health information, except as specified. In UCH's Notice of Privacy Practices (Compl. Exhibit B), Defendant pledges that "[w]e understand that medical information about you and your healthcare is personal. We are committed to protecting medical information about you." *Id.* ¶ 88. Therein, UCH lists the purposes for which it may disclose health information without authorization, none of which include the disclosure of health information, PHI, to third-parties uninvolved in patient care for marketing purposes, without patients' authorization. *Id.* ¶¶ 91-92. Moreover, in the Notice of Privacy Practices, UCH promises that "[w]e will first obtain your written authorization before using or disclosing your medical information for any purpose not described above, **including disclosures that constitute the sale of protected health information or for marketing communications paid for by a third party** (excluding refill reminders, which the law permits without your authorization)." *Id.* ¶ 90 (emphasis added). Further, UCH maintains a Website Privacy Policy (Compl. Ex. C) in which it promises that, "[w]e do not and will not sell

---

[3] https://unioncountyhsopital.com/services/ (Feb. 23, 2024)
[4] https://unioncountyhospital.com/patient-portal/ (Feb. 23, 2024)
[5] https://unioncountyhospital.com/provider/ (Feb. 23, 2024)
[6] https://unioncountyhospital.com/contact-us/ (Feb. 23, 2024)
[7] https://unioncountyhospital.com/medical-records/ (Sept. 26, 2023)
[8] https://unioncountyhospital.com/online-bill-pay/ (Sept. 26, 2023)
[9] https://unioncountyhospital.com/healthcare-pricing-information/ (Sept. 26, 2023)

personal information[,]" and that only "Non-PII" collected by UCH and its Service Providers will be "used to improve marketing and sales efforts, better connect Website visitors with hospital services/providers, and connect hospital services/providers with potential patients."

Despite these promises, and unbeknownst to patients—Plaintiff and the Class Members—Defendant installed trackers, including the Meta Pixel on the Online Platforms which collected and disclosed their Private Information, including Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook" or "Meta"), and Google, LLC ("Google"), DoubleClick Ads, Microsoft Corp. ("Microsoft"), and potentially others ("the Disclosure"). On information and belief, the information that Defendant's Meta Pixel, and possibly CAPI, sent to Facebook included the Private Information that Plaintiff and the Class Members submitted to UCH's Website and Online Platforms, including, *inter alia*: their browsing activities, the pages they viewed and the buttons they clicked; information concerning their statuses as patients; the medical services they viewed; their activities on the patient portal page; their searches for medical providers; details about patients as they navigated to pages about UCH's emergency room; their activities regarding admissions to the hospital; activities on the Contact Us page and to request medical records; their activities paying medical bills and viewing pricing estimates; as well as their identifying information, such as IP addresses and identifying cookies. *Id.* ¶ 21.

Plaintiff is a patient of UCH since 2013, including for gastrointestinal issues, falls, COVID-19, the flu, strep throat, blood work, X-Rays, MRI scans, surgical treatment, emergency care, and inpatient stays. She used Defendant's Online Platforms, first in 2014, and last in December 2023, to: search for physicians, search for treatment information; pay for medical services; research UCH's treatments and Services; and, to use the Patient Portal. *Id.* ¶¶ 174-176. After Plaintiff used

Defendant's Online Platforms, she began receiving medical advertisements in her Facebook feed regarding the medical conditions and symptoms she searched for and viewed on the Online Platforms. *Id*. ¶ 177. She provided her Private Information to Defendant and trusted that the information would be safeguarded according to UCH's privacy policies and the law. Further, she never intended to sell her Private Information, nor would have permitted it to be made available for sale on the resale market. *Id*. ¶¶ 181-182. On information and belief, through its use of the Meta Pixel and other tracking technologies, UCH disclosed to Facebook: the pages and content Plaintiff viewed; Plaintiff's seeking of medical treatment; Plaintiff's status as a patient; information regarding Plaintiff's patient portal activity; the medical providers Plaintiff searched for and viewed; medical Services Plaintiff viewed; Plaintiff's activities to pay medical bills; and, her identity via her IP address and/or "c_user" cookie and/or Facebook ID. *Id*. ¶ 183. As a direct and proximate result of UCH's Disclosure, Plaintiff and the Class Members have suffered myriad injuries, including: loss of privacy; unauthorized disclosure of her Private Information; unauthorized access of her Private Information by third parties; Plaintiff now receives targeted health-related advertisements on Facebook and elsewhere, reflecting her private medical treatment information; Plaintiff paid UCH for medical services and the services she paid for included reasonable privacy and data security protections for her Private Information, but she did not receive the privacy and security protections for which he paid, due to UCH's Disclosure; the portion of UCH's revenues and profits attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of UCH's savings in marketing costs attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of UCH's revenues and profits attributable to serving and monetizing advertisements directed to Plaintiff as a result of collecting her Private Information without

authorization and sharing it with third parties; value to Plaintiff of surrendering her choice to keep his Private Information private and allowing Defendant to track his data; embarrassment, humiliation, frustration, and emotional distress; decreased value of Plaintiff's Private Information; lost benefit of the bargain; increased risk of future harm resulting from future use and disclosure of his Private Information; and statutory damages. *Id.* ¶ 185.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'") (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

## IV. ARGUMENT

### A. Plaintiff Adequately Alleges Damages for her Negligence and Contract Claims.

Contrary to Defendant's argument, Plaintiff has alleged present injury and damages flowing from Defendant's unlawful disclosure of her (and the Class Members') Private Information sufficient to sustain her negligence and contract claims. These alleged injuries and damages include the unauthorized access of her and the Class Members' Private Information by

third parties, the improper disclosure of their Private Information, lost benefit of their bargain, and lost value of their Private Information. Compl. ¶¶ 274, 287, 339. These are concrete, recoverable damages. Federal courts applying Illinois law recognize that the allegations of fear, anxiety, and worry regarding the loss of control over one's private health information are sufficient to state a claim under Illinois law, "including in the data privacy context." *See, Loyola*, 2024 WL 3338941, at *7 (citing *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 C 1836, 2024 WL 1556298, at *2 (N.D. Ill. Apr. 10, 2024) and *In re Gallagher*, 631 F. Supp. 3d 573 at 587).

Defendant relies heavily on *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984 (N.D. Ga. 2024) in support of its position that Plaintiffs' alleged damages are insufficient (MTD at 4.) *Piedmont Healthcare* is highly unpersuasive given that several Illinois District Courts—applying Illinois law—have held alleged damages such as those pled here are sufficient in the context of data privacy. *See, e.g., Aspen Dental, Hartley II*, 2024 WL 1886909; *Loyola*, 2024 WL 3338941.

Plaintiff also sufficiently states damages in the context of her breach of contract claim. Illinois law is clear: "A defrauded purchaser is entitled to damages which will give him the 'benefit of his bargain'"—a harm which Plaintiffs alleged and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); *see e.g.*, Compl. ¶¶ 310, 324; *see also, e.g., Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, E.g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment."); Plaintiffs further alleged decreased value of their private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiffs' Private Information, and increased risk of future harm. Compl. ¶¶ 310, 324; *see e.g., Gallagher*, 631 F. Supp. 3d at 587 (damages sufficient for breach of implied contract include

"loss of the economic value of purchases"). Defendant does not even engage with these allegations.[10]

As Plaintiff alleges, "Plaintiff and Class Members fully performed their obligations under the express contract with Defendant." Compl. ¶¶ 308, 321. Defendant offered the Privacy Policies for a reason: it sought to hold the parties to the terms it set forth therein. After holding those terms out, Defendant cannot cry 'foul' when patients accept them. Plaintiff asks nothing more than to hold Defendant to the terms it set out for *both* parties, and Defendant's motion to dismiss Plaintiff's breach of contract claims should be denied.

**B. Plaintiff has Sufficiently Alleged Invasion of Privacy**

Defendant contends that Plaintiff's intrusion upon seclusion claim must be dismissed as Plaintiff alleges a disclosure, not an intrusion. Def's Memo at 6. Not true. Plaintiff has alleged that she had a reasonable expectation of privacy in communicating her sensitive Private Information to Defendant —her medical provider—on its website, and Defendant utilized secret trackers to surreptitiously disclose that Private Information to unauthorized third parties without Plaintiff's consent, an act that is highly offensive to a reasonable person which caused Plaintiff embarrassment, humiliation, frustration, and emotional distress. Compl. ¶¶ 13, 52, 173, 185, 273-274, 287. Courts in Illinois and across the country have found similar claims have merit. *See Flores v. AON Corp.*, 2023 IL App (1st) 230140, ¶52; *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (2012); Exhibit A-6 (listing orders denying similar motions to dismiss privacy claims).

Defendant's reliance on *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 U.S. Dist. LEXIS 200619, *7 (N.D. Ill. Nov. 8, 2023) ("*Hartley II*") and *Kurowski v. Rush*, 659 F. Supp. 3d 931, 943-44 (N.D. Ill. 2023) ("*Kurowski I*") for the proposition that disclosure or publication of private

---

[10] Courts across the country find Plaintiff's allegations sufficient in just this context. *See* Exhibit A-5.

Personal Information by the healthcare provider is not an "intrusion" is misguided.[11] Def.'s Memo. at 6. The courts there reasoned that because the "the allegedly intercepted communications were intended to reach [the defendant healthcare provider]" and the "actual intrusion upon patients' seclusion, via interception of their communications, [was] carried out by third parties" the plaintiffs' intrusion upon seclusion claims failed. *Hartley*, 2023 U.S. Dist. LEXIS 200619 at *7; *see also Kurowski I*, at 943-944. Plaintiff urges the Court to reject this line of reasoning. The court in *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, *30 (D. Ariz. May 10, 2024), analyzed the conditions upon which the plaintiff's private information was communicated to the defendant healthcare provider, noting, "the voluntariness of [the plaintiffs'] actions is immaterial to the intrusion upon seclusion claim. Plaintiffs allege that they were unaware that their [PHI] would be disclosed to third parties. Thus, any consent given to Defendant to use [the PHI] for a limited purpose was invalid for Defendant's larger ultimate purpose." The court then cited to the Second Restatement of Torts § 892B (1979), which states:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm. *Id*. at *30

The *McCulley* court then ruled that because the plaintiffs did not consent to third party technology companies gaining access to their Private Information, this was sufficient to sustain an intrusion upon seclusion claim. Such reasoning has been adopted by numerous Courts around the country, including by the Illinois First District Appellate Court. *M.R. v. Salem Health Hosps. &*

---

11 In each of these cases, the plaintiffs' claims involving the defendant healthcare provider sharing PHI with third party technology companies via hidden website trackers were allowed to proceed in subsequent rulings by the same court. *See Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Rush II*") (allowing claims to proceed); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Rush III*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) (denying motion to dismiss wiretap claim).

*Clinics*, 2024 U.S. Dist. LEXIS 155513, *16 (D. Or. Aug. 28, 2024) (finding plaintiff alleged an intentional intrusion where she voluntarily disclosed PHI to the defendant as a part of the patient-physician relationship, but never intended Google and Facebook to receive it); *Flores* 2023 IL App (1st) 230140 at ¶52; *see* Exhibit A-6.

The Court should not reward Defendant's deception and instead follow the well-reasoned authority above. As in *McCulley*, Plaintiff has alleged that Defendant placed hidden trackers on its website with knowledge that the Private Information Plaintiff input into the website would be transferred to third parties. Compl. ¶¶ 10, 13, 52, 71-73, 170, 173. Thus, Plaintiff cannot be said to have "voluntarily" provided her Private Information to Defendant when the tracking technologies Defendant employed were invisible to her. *Id*. Furthermore, Defendant, a healthcare provider, made affirmative representations to Plaintiff, its patient, that it was not collecting or selling her personally identifying Private Information. *Id*. ¶¶ 86-105. This is sufficient to state a claim for intrusion upon seclusion under Illinois law. *See Johnson v. K mart Corp*., 311 Ill. App. 3d 573, 579 (1st Dist. Jan. 13, 2000) (finding facts to support an intrusion upon seclusion claim where the plaintiffs had a reasonable expectation that their conversations with fake "coworkers," who were secret agents of their employer, would remain private, and that any disclosures obtained through this deception were not voluntary disclosures).

As Defendant has failed to meet its burden to demonstrate Plaintiff has not plausibly alleged her claim and Defendant is clearly on notice of this claim and can formulate a defense, its motion to dismiss Plaintiff's intrusion upon seclusion claim should be denied.

### C. Plaintiff Has Sufficiently Pleaded Bailment

Next, Plaintiff brings a claim for breach of bailment. *See* Compl. ¶¶ 334-340. In short, Plaintiff alleges that she, the Class, and UCH contemplated a mutual benefit bailment when Plaintiff and Class members transmitted their Private Information to Defendant solely for purposes

of receiving medical treatment and the payment thereof. UCH breached that bailment by using, and Disclosing, Plaintiff's and the Class's Private Information for a different purpose than the Plaintiff and the Class intended, i.e. for marketing purposes instead of to facilitate their medical treatment, and for a longer time period and/or in a different manner or place than the parties intended. *Id.* ¶ 338. Illinois has long recognized a cause of action for breach of bailment. *See Wright v. Autohaus Fortense, Inc.*, 129 Ill. App. 3d 422, 425 (1984) ("In a bailment case, in order to establish a *prima facie* case and raise a presumption of defendant's negligence, a plaintiff must prove (1) an agreement, express or implied, (2) delivery of the property in good condition, and (3) its nonreturn or redelivery in a damaged condition.") (citations omitted).

UCH argues that Plaintiff's bailment claim fails because Plaintiff cannot show that UCH took "exclusive possession" of her Private Information, citing to *In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *9 (N.D. Ill. June 3, 2024). However, a closer examination of the tort defeats UCH's argument. The simple fact that the bailor retains control over property does not defeat the "exclusive possession" element of a bailment claim. Illinois appellate courts have held exactly this, where an automobile owner entered into a bailment with an automobile repair shop to repair the care, but retained the keys, only to have the car damaged while under the bailee's care. *Wright*, 129 Ill. App. 3d at 425 (1984). The thrust of the "exclusive possession" element is simply that the bailor entrusted the property to the bailee's sole control. This certainly occurred here—once Plaintiff and the Class Members entrusted their property, their Private Information, to UCH, they lost control over the use of that Data. UCH used and Disclosed the Private Information for a marketing purposes, a purpose other than as intended, resulting in damages, including loss of value of the information. Thus, Plaintiff can satisfy the "exclusive possession" element of her breach of bailment claim.

Defendant too argues that Plaintiff's bailment claim fails because she cannot allege that she requested her property back from UCH, citing to *Sweet v. BJC Health Sys.*, 2021 WL 2661569, at *8 (S.D. Ill. June 29, 2021). *But*, as Plaintiff alleges, she and the Class were unaware that UCH was disclosing their Private Information to third parties via the Meta Pixel and other trackers, in a different manner or place than the parties intended. *See* Compl. ¶ 243. As such, they could not request return of the information.

Courts across the country have upheld bailment claims in cases involving disclosure of information via tracking technologies such as this case, and the Court should do the same in this case as well. *See Doe v. Coffee Reg'l Med. Ctr., Inc.*, 2024 Ga. Super. LEXIS 602 (Ga. Super. Ct. Sept. 6, 2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357 (S.D.N.Y. July 30, 2024); *Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024).

### D. Plaintiff States a Claim for Unjust Enrichment

Defendant too argues that Plaintiff has not sufficiently pleaded a claim for unjust enrichment (Compl. ¶¶ 326-333), because Plaintiff has not alleged any detriment suffered. As the Illinois Court of Appeals held in *Flores*, a plaintiff "state[s] a cause of action based on a theory of unjust enrichment" if they "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores* at ¶ 37 (quoting *HPI Health Care Serv.'s v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989)). However, Defendant's argument ignores the allegations in Plaintiff's Complaint. UCH collected, used, and disclosed the Private Information for its own gain, for marketing purposes, resulting in actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy practices and procedures that Plaintiff and Class Members paid for, and those purchases with unreasonable data privacy practices and procedures that they received; and ultimately, loss of the value of their

Private Information. Compl. ¶¶ 328, 331. Clearly, Plaintiff has properly alleged suffering a detriment for purpose of her unjust enrichment claim. UCH's arguments fail. These allegations are sufficient under Illinois law to "plausibly suggest that [Defendant] retained a measurable benefit and that the retention of that benefit was unjust." *See Tenet Healthcare*, 2024 WL 1756075, at *5.

### E. Plaintiff sufficiently alleged a violation of the Electronic Communications Privacy Act

#### *i. Plaintiff sufficiently alleged unlawful interception; the crime-tort exception applies*

Defendant first argues that Plaintiff's claim does not qualify for the crime-tort exception, citing to decisions from the Second and Third Circuit for the maxim that the criminal or tortious purpose must be "independent" from the alleged interception. Def's Memo at 11 *citing Caro v. Weintraub,* 618 F.3d 94, 99-100 (2d Cir. 2010); *In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 145 & n.81 (3d Cir. 2015).

However, this is not the law in the Seventh Circuit and indeed, the same argument was rejected in *Kurowski v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*"). The *Kurowski IV* court held that it "sees no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception" and because the Electronic Communications Privacy Act's ("ECPA") "purpose" requirement applies to "'any criminal or tortious act in violation of the Constitution or laws of the United States or of any State,'" an unlawful disclosure of PHI under HIPAA applies. *Id*. The court ruled that the plaintiff "plausibly alleged that Rush acted with the 'conscious desire' to 'knowingly...disclose' PHI to a third party without authorization," a HIPAA violation. *Id*. at *2. The court explained that because plaintiffs alleged that the defendant had the "ability to select which specific pages" would intercept and share patients' data to Facebook, and that "it actively chose to employ the tracking technology on certain pages of its website," a

reasonable factfinder could infer the defendant "consciously desired" to intercept and transmit patients' PHI. *Id*. at *4.

As in *Kurowski IV*, Plaintiff alleges that Defendant disclosed her Private Information to Facebook and other third parties in violation of HIPAA. Compl. ¶¶ 16, 107-173, 180-185, 194-201. Further, as in *Kurowski IV*, Plaintiff alleges that "Defendant could have chosen not to use the Meta Pixel, or it could have configured it to limit the information that it communicated to Facebook, but it did not. Instead, it intentionally selected and took advantage of the Meta Pixel's "features and functions" that resulted in the disclosures of Plaintiff's Private Information. Compl. ¶ 167. The Court should follow the Seventh Circuit and reject Defendant's "purpose" argument and deny Defendant's motion. *Kurowski IV; Hartley II*; *Smith v. Loyola Univ. Med. Ctr*., No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024).

Next, Defendant argues that Plaintiff's claim must fail because Defendant's surreptitious interception, recording, and subsequent disclosure of her Private Information was not done with the specific purpose to harm Plaintiff (Def's Memo at 11), but rather to increase its own profits. Defendant cites a host of inapposite Eighth and Ninth Circuit cases in support of its contention. However, again, this is not the law in the Seventh Circuit. In fact, the Defendant *acknowledge* this fact in its Motion, admitting that Illinois Courts have consistently "allow[ed for] a federal Wiretap Act claim to survive under the exception based on [a] legal violation." Def's Memo at 13. This Court should follow these case law from the Seventh Circuit, as identified by Defendant, and reject the contention that if a party's purpose of committing a crime or tort is to make money, the Crime Tort Exemption somehow does not apply. *See, e.g.*, *Kurowski IV*, at *5 (noting "[m]any crimes and torts are motivated by a desire to make money…"); *Hartley II* at *2-3; *see also Mekhail v. N. Mem'l*

*Health Care*, 2024 U.S. Dist. LEXIS 55880, at *15 n. 4 (D. Minn. Mar. 28, 2024) ("[I]t defies common sense that a clearly harmful act could escape liability as long as it was done for profit.").

***ii. Plaintiff sufficiently alleged intercepted contents***

Next, Defendant asserts that the data Plaintiff alleges Defendant intercepted did not qualify as "individually identifiable health information". Def's Memo at 13 *citing Kurowski I* at 938 (finding plaintiff's allegation that defendant disclosed patient's IP addresses, patient cookie identifiers device identifiers, and URLS are insufficient to demonstrate disclosure of her PHI). In contrast and as extensively set forth above, Plaintiff's allegations concerning the data Defendant intercepted consist of specific, Private Information related to Plaintiff's health condition including but not limited to her identity, IP address, status as Defendant's patients, her medical treatment, and activities on Defendant's website, including the content Plaintiff viewed, the parameters of doctor searches, and search terms. Compl. ¶¶ 16, 21, 107-173, 180-185, 194-201. Although Plaintiff certainly relies upon HIPAA as informing the standard of care, she is not suing for violation of HIPAA, nor could she, given the absence of a right of action. Courts around the country have rejected similar attempts by healthcare providers in analogous cases to cite to *Kurowski I* and this Court should too. *See Kane*, 2024 WL 1178340, at *7; *Kurowski IV*, at *2-7; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. Dec. 22, 2022).

*AHA v. Becerra*, is similarly distinguishable. No. 4:23-cv-01110-P, 2024 U.S. Dist. LEXIS 108847, at *44 (N.D. Tex. June 20, 2024). Specifically, this case does ***not*** concern the general public's use of unauthenticated or public websites and the concomitant disclosure of their IP addresses. Rather, as extensively alleged above, this case challenges Defendant's use of tracking technologies, including the Meta Pixel, to collect and to disclose the Private Information of their own patients, including Plaintiff, to unauthorized third parties without consent. Compl. ¶¶ 21, 107-173, 183. Indeed, *AHA* recognizes that the types of information disclosed here *would* involve

protected health information and that Department of Health and Human Services "[c]an and should remind covered entities that the Privacy Rule would apply in those circumstances." 2024 WL 3075865 at *14. Moreover, Plaintiff has not only alleged that Defendant disclosed sensitive information concerning their interactions on Defendant's public webpages, but also information shared through Defendant's authenticated non-public webpages, including its patient portal. Compl. ¶¶ 123-128.

***iii. Plaintiff Sufficiently Alleged Violations of the Electronic Communications Service Act and the Stored Communications Act***

Defendant asserts it is not "an electronic communication service provider." Def's Memo at 15. But this argument rests on a misreading of the statute. The statute imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," *i.e*., made available, its website to the public. *See* Compl. ¶¶ 10-11, 26, 44.

Contrary to Defendant's contention otherwise, courts have recently ruled against Defendant's position that only electronic communications services' such as internet service providers" qualify as an electronic communication service provider. For example, in *In re BetterHelp, Inc. Data Disclosure Cases* the defendant argued, as Defendant does here, that the plaintiffs ECPA claim should fail because it was not "in the business of providing electronic communications services, in the manner of ordinary email and internet service providers." 2024 U.S. Dist. LEXIS 187442, at *10 (N.D. Cal. Oct. 15, 2024). There, the court dismissed this argument and ruled the defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers." *Id*; *see also Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.,* 793 F. Supp. 2d 1302, 1316 (N.D. Ga. 2011) (finding defendant "likely

violated the SCA by intercepting her personal email account trade-secret material" without her consent).

Defendant has again failed to meet its burden. Taken in the light most favorable to Plaintiff, it is clear that Defendant's motion to dismiss Plaintiff's ECPA claim must thus be denied.

**F. Defendant Fails to Meet its Burden to Show Union County Hospital's Website is Not an Electronic Communications Service for Purposes of Plaintiffs' ECPA Claims.**

Defendant next argues that its website is not an electronic communications service for purposes of Plaintiff's Wiretap (Count X) and Stored Communications Act (Count XI) claims under the under the Electronic Communications Privacy Act (collectively, "ECPA claims"). Defendant fails to support its position with controlling authority, and its motion must be denied. Illinois district courts—**including four different Courts in the Northern District of Illinois**—have found allegations are sufficient ***in this exact context***. *See, e.g., Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley*. Here, Plaintiffs sufficiently alleged their ECPA claims by alleging Defendant intentionally employed third-party source code to intercept and disclose their Protected Information to third parties without their consent. Compl. ¶¶ 365-396. Plaintiffs' ECPA claims here, too, are sufficient.

Defendant asserts it is not "an electronic communication service provider." MTD at 15. But this argument rests on misreading the statute. The statute imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," *i.e.*, made available, its website to the public. *See* Compl. ¶¶ 11, 44. Defendant claims that "numerous courts" have held that "the provider of an electronic communication service is the provider of the underlying service which transports the data, such as an internet service provider or a telecommunications company whose cables and phone lines carry internet traffic, and not the provider of a product or service which facilitates the data transport."

MTD at 15 (citing *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 523 (N.D. Ill. 2011); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2005)). However, Defendant has not, and cannot, direct the Court to an Illinois case reaching this conclusion in the context of hospital data privacy. Conversely, the majority of Illinois courts that have addressed ECPA claims in the hospital website privacy context have concluded that ECPA claims have merit in this context. *See, e.g.*, *Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley*.

Courts outside Illinois have recently ruled the same way. For example, in *In re BetterHelp, Inc. Data Disclosure Cases* the defendant argued, as Defendant does here, that the plaintiffs ECPA claim should fail because it was not "in the business of providing electronic communications services, in the manner of ordinary email and internet service providers." 2024 U.S. Dist. LEXIS 187442, at *10 (N.D. Cal. Oct. 15, 2024). There, the court dismissed this argument and ruled the defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers." *Id*. For all these reasons, Defendant's motion to dismiss Plaintiff's ECPA claims should be denied.

**G. Plaintiff Sufficiently Pleaded the Elements of her Computer Fraud and Abuse Claim.**

Plaintiff sufficiently alleged Defendant violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") by alleging Defendant exceeded its authorized access by obtaining and disclosing Plaintiff's information without her consent. Compl. ¶¶ 414-75. The Court should deny Defendant's Motion to Dismiss Plaintiff's CFAA claim.

***i. Plaintiff Alleged Defendant Exceeded Authorized Access to Her Computer and Obtained Information Thereby.***

Defendant cites *Van Buren* and other off point cases to argue that it did not "exceed" its "authorized access" to Plaintiff's Private Information by disclosing it to third parties like

Facebook. MTD p.19. But Plaintiff alleged Defendant had *no* authorized access to disclose their data. Compl. ¶¶ 10 (Defendant "knowingly configured and implemented into its website ... trackers ... without patients' knowledge or authorization"). This violates CFAA; for one thing, "*Van Buren's* holding applies only to the exceeds authorized access prong and did not similarly limit the scope of the other provisions of the CFAA, including the without authorization prong." *ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022). Third parties like Facebook and Google had *no authorization* to access Plaintiffs' computers whatsoever and any further question is one of fact. *See, e.g.*, Compl. ¶¶ 23, 30, 33, 46, 106, 170, 173, 185; *United States v. Thompson*, 2022 WL 834026, at *4 (W.D. Wash. Mar. 21, 2022), *reconsideration denied*, 2022 WL 1719221 (W.D. Wash. May 27, 2022) ("Any argument that mistake or technological process rendered defendant 'authorized' is properly resolved by the trier of fact.").[12]

Defendant does not even attempt to argue it had unfettered authorization to access Plaintiff's computer and information—of course it did not. Defendant did not have, for example, "administrative access to [Plaintiff's] servers and systems." *Anaya v. Birck*, 2024 WL 2209345, at *11 (N.D. Ill. May 16, 2024). This alone requires discovery to determine what data Defendant accessed and whether such access "exceeded" Defendant's authority under its contracts with Plaintiff and the law. *See, e.g.*, *Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972, at *4 (D. Idaho Sept. 3, 2024) (under CFAA, "questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries.") Accordingly, Defendant's Motion should be denied.

---

[12] Defendant cannot shift liability for tracker use to third parties. *See e.g.*, *ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596, at *7 (N.D. Ill. July 26, 2023) ("Ownership [of the server] does not matter. It makes no difference that [defendant] does not own the servers (presumably [a third party] does)." (citation omitted)).

### *ii. Plaintiff has Alleged Statutory "Loss" to State a Private Civil CFAA claim.*

Lastly, Defendant argues Plaintiff failed to allege any loss. Plaintiff alleged that Defendant's secret transmission of Plaintiff's Private Information, which were never meant for public consumption, resulted in numerous losses which aggregate to at least $5,000 in value, including but not limited to monetary damages, loss of privacy, unauthorized disclosure of Private Information, decreased value of Private Information, lost benefit of the bargain, and increased risk of future harm resulting from further unauthorized disclosure of her information. Compl. ¶¶ 273, 299, 310, 324, 328, 417. These allegations are sufficient. *Fidlar Techs. v. LPS Real Estate Data Sols.*, 2013 U.S. Dist. LEXIS 159929, at *28-29 (C.D. Ill. Nov. 8, 2013) (allegations that defendant's access in authority resulted in a decrease in plaintiff's revenue and that plaintiff suffered monetary damages in excess of $5,000, sufficient). Defendant's Motion to Dismiss should be denied.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss must be denied.

Dated: January 22, 2025

Respectfully submitted,

/s/ *Lynn A. Toops*
Lynn A. Toops, No. 63337-43
Mallory K. Schiller (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
mschiller@cohenandmalad.com

Samuel J. Strauss (*Pro Hac Vice* forthcoming)
Raina C. Borrelli (*Pro Hac Vice* forthcoming)
STRAUSS BORRELLI, PLLC
980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100

sam@straussborrelli.com
raina@straussborrelli.com

J. Gerard Stranch, IV, *Pro Hac Vice*
Andrew E. Mize, *Pro Hac Vice*
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2025, I filed the foregoing *Response In Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

/s/ *Lynn A. Toops*
Lynn A. Toops

***Counsel for Plaintiff and the Proposed Class***