## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JANE DOE, Individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:24-CV-02284-NJR** |
| **DEACONESS ILLINOIS UNION COUNTY HOSPITAL, INC., d/b/a DEACONESS ILLINOIS UNION COUNTY, d/b/a UNION COUNTY HOSPITAL,** | |
| **Defendant.** | |
| **JOEL JUENGER, Individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Consolidated Action** |
| **DEACONESS HEALTH SYSTEM, INC., DEACONESS ILLINOIS RED BUD REGIONAL HOSPITAL, INC., and RED BUD ILLINOIS HOSPITAL COMPANY, LLC,** | |
| **Defendants.** | |

## <u>STIPULATED ORDER ON ESI PROTOCOL</u>

**ROSENSTENGEL, District Judge:**

The parties have submitted a stipulation for the entry of an Order governing the discovery of electronically stored information ("ESI") in this matter. Pursuant to that stipulation, the Court **ORDERS** as follows:

1.  **PURPOSE**

This Stipulated Order will govern the mutual discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules for the Southern District of Illinois, the undersigned's Case Management Procedures, the Rules of Professional Conduct, and any other applicable orders and rules.

2.  **GENERAL PRINCIPLES**

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties for good cause. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules governing discovery disputes. Except as expressly provided in this Order, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

This Stipulated Order may only apply to the parties in this matter.

3.  **DEFINITIONS**

    a.  **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, and ESI, as defined in this Order.

    b.  **"Electronically Stored Information"** or **"ESI"** means Documents or Data existing in electronic form at the time of collection, including but not limited to: email messages or other means of electronic

communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), image files (*e.g.*, PDF), chat applications, social media account information (including, but not limited to, any Google, Facebook, and Instagram account data and account information), browsing histories, text messages, and other ephemeral data sources.

c. **"Hard-Copy Document"** means Documents existing in paper form at the time of collection.

d. **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is .xls or .xlsx.

e. **"Near-Native Format"** means and refers to the format of ESI that preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format, including where redactions to an otherwise Native Format item are made. For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of individual email messages. Static images are not near-native formats for production of any form except Hard-Copy Documents.

f.  **"Metadata"** means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

g.  **"Optical Character Recognition"** or **"OCR"** means the process of recognizing and creating a file containing visible text within an image.

h.  **"Producing Party"** means any party or third-party to this litigation who produces documents or ESI pursuant to any discovery request, subpoena, or otherwise.

i.  **"Receiving Party"** means a party or third-party to this Action who requests the protections provided by this ESI Protocol.

## 4.   PRESERVATION

The parties have discussed their preservation obligations and preservation needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a.  They shall abide by their common law obligations to preserve relevant documents and information;

    b.  Pursuant to section 5 below, the parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "Compliance head," "IT manager," and "marketing manager." The parties may add or remove proposed custodians during the negotiation process;

    c.  The parties will meet and confer regarding the custodians for whom ESI will be preserved;

    d.  The parties will disclose any data sources that are not reasonably accessible because of undue burden or cost and whether ESI from these sources will be preserved but not searched, reviewed, or produced.

## 5.   ESI DISCLOSURES

Prior to conducting searches for ESI in response to discovery requests, and in conjunction with negotiations on discovery requests, each party shall disclose and make a good-faith effort to agree on, within a reasonable amount of time:

a. **Custodians**. The names, title, and roles of custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. As used in this paragraph, the term "Custodians" includes not just defendant witnesses, but also the named plaintiffs.

b. **Non-custodial Data Sources**. A list of non-custodial data sources (*e.g.*, shared drives, servers, internal messaging applications, online storage such as Dropbox or Google Drive,), if any, likely to contain discoverable ESI.

c. **Third-Party Data Sources**. A list of third-party data sources, if any, likely to contain discoverable ESI, and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

d. **Inaccessible Data**. To the extent that a party wishes to exclude any additional categories of documents and ESI from preservation or production that a party asserts is not proportionate or reasonably accessible under the Federal Rules of Civil Procedure, the party will disclose the document category and specify the extent of the burden, and the parties will meet and confer in an effort to resolve the issue.

e.  Parties have a continuing obligation to identify any other custodial and non-custodial data sources likely to contain discoverable ESI and preserve them.

**6.  SEARCH METHODOLOGY**

The parties agree that in responding to an initial request pursuant to Federal Rule of Civil Procedure 34, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, such as whether to use search terms.

If search terms are requested by the Requesting Party, the parties must meet and confer in good faith regarding search terms and queries, file types and date restrictions, data sources and custodians. The parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the Producing Party providing hit count reports. The Producing Party may identify each search term or query returning overbroad results demonstrating the overbroad results and provide a counter proposal as to revised searches or queries. In the event the parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts.

If a party elects to use technology-assisted review, continuous-active learning, or other advanced technology-based analytics to cull unstructured ESI, the parties will meet and confer regarding the parameters that will apply. A Producing Party may use any methodology and tool for the purpose of prioritization and/or expediting the review, so

long as no documents are culled or removed from attorney review or production based on such methodology. A Producing Party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the Requesting Party. Upon review of the exported electronic file(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

### 7.  PRODUCTION FORMATS

**Principles applicable to all productions of ESI and Hard-Copy documents**.

a.  The parties agree to make rolling productions based on a production schedule to be agreed upon by them.

b.  Documents will be produced to the Requesting Party in the formats addressed below under "Principles applicable to ESI" and "Principles applicable to hard-copy documents."

c. Each document file shall be named with a unique number (Bates Number). File names should not be more than 20 characters long or contain spaces.

d. Entire Document families must be produced, even if only the parent or an attachment is responsive. Specifically, the Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments may be produced, except any document that must be withheld or redacted on the basis of privilege or work-product protection, which will be replaced with a slipsheet or redacted, and entirely withheld documents (as opposed to redacted) placed on a privilege log as required. The parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread. The Producing Party will determine whether hyperlinked documents and modern attachments exist and whether they may contain responsive and relevant information. If they do exist and are a possible source of relevant and responsive information, the Producing Party will make reasonable efforts to preserve the underlying documents for production. The parties will meet and confer in good faith regarding any technical burdens regarding hyperlinked documents.

e.  The full text of each electronic document shall be extracted or OCRed ("Extracted Text") and produced in a text file. Document level extracted text or OCR for documents without extracted text will be provided by the Producing Party for every record, including for scanned hard copy documents as described above. Extracted text will not be provided for ESI that has been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text. The extracted text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

f.  The Parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document with the exception of the following fields: (a) ProdBeg, (b) ProdEnd, (c) ProdBegAttach, (d) ProdEndAttach, and (e) AllCustodian, which should be populated regardless of whether the fields can be populated pursuant to an automated process. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

g.  The parties agree that this Stipulated Order does not preclude a party from requesting the production of documents by inspection of hard copy documents as they are kept in the ordinary course of business.

h.  Confidentiality: The parties have entered into a protective order in this action which specifies various confidentiality treatment levels for use in this case. The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left blank. The Producing Party will brand any confidentiality endorsement in a corner on any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

**Principles applicable to ESI**.

i.  The parties agree that, except as provided in this Order or otherwise agreed upon by the parties, ESI shall be produced in native, PDF, or Group IV TIFF, 300-dpi format. No matter the format, such productions shall be accompanied by Opticon and IPRO load files (or other generally acceptable load file format) that contains metadata fields identifying natural document breaks and also includes companion OCT and/or extracted text files. Each TIFF file shall be given a unique file name that matches the Bates number label on the first page of the document.

j.   Documents with hidden content, such as spreadsheets or presentations, shall be produced in native or TIFF with all content unhidden and notes displayed. If a document must be produced in TIFF, it shall be processed with all content unhidden and any notes displayed on the TIFF image. The Parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

k.   If a Document is more than one page, the parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document.

l.   The Parties agree to produce documents using the Central Standard Time Zone.

m.  A Producing Party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform. However, family relationships will be maintained and only exact email family groups, including email

duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the Producing Party may utilize a separate "All Custodians" field which identifies all custodians of the subject document.

n. Email Threading. The Parties may utilize threading or "email thread suppression," employing commercially acceptable methods to reduce duplicative email threads by producing only the most-inclusive email message and their attachments from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments, a duplicate of which is not otherwise attached to a later in time email within that same thread. Accordingly, exact duplicates of emails as well as email messages

comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced, however relevant and responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread. Participants in lesser-included emails that otherwise would have been subject to review as custodians shall be listed in the most-inclusive email's "All Custodians" field included in the data load file. The Receiving Party reserves the right to request lesser included emails for completeness under the evidentiary rules and for good cause shown.

o. The parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

p. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

q.  The original native files, or near-native files as appropriate, should be
    produced in addition to a single-page PDF or TIFF placeholder for each
    document. The placeholder should be endorsed with "Native Format
    Document," or equivalent, and endorsed with the Bates number
    assigned to that document. The produced native file should be named
    with the Bates number assigned to that document. Any confidentiality
    or other designations stamped on the placeholder for such a document
    shall apply to the entire native file and its contents. For documents
    whose native format is MS Power Point, the original native files shall be
    produced with any comments and color preserved. The produced
    native file should be named with the beginning Bates numbers assigned
    to that document. The parties will meet and confer upon the other types
    of files that are not easily converted to image format and will therefore
    be produced in native format.

r.  The relative path to the native file should be included in the delimited
    text file and the produced files should be organized in a "NATIVES"
    folder in the production media.

s.  All documents, native ESI, photographs, and video shall be produced in
    color if stored in color. Documents produced in color shall be produced
    as JPEG images, 300 dpi or higher and 24-bit color depth. Except as
    already specified in this Order, the parties agree to make a good faith
    effort to comply with reasonable and specific requests for the

production of higher resolution or color images. Nothing in this order shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party shall not object if the document as originally produced is illegible or otherwise difficult to read. The Producing Party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

**Principles applicable to hard-copy documents**.

t.  The parties agree that documents existing in hard copy form should be produced as PDF or in single-page Group IV, 300-dpi TIFF and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format). Each file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, (c) AttachProdBeg, (d) AttachProdEnd and (e) custodian name, to the extent available. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

u.  The parties agree that documents existing in hard copy form may be produced in searchable PDF if the parameters in paragraph (t) are unduly burdensome and not proportionate to the needs of the case. Each

PDF file will be given a unique file name that matches the Bates number
label on the first page of the document.

v.  The parties will undertake best efforts to unitize documents correctly.
In scanning hard-copy documents, distinct documents should not be
merged into a single record, and single documents should not be split
into multiple records (*i.e.*, paper documents should be logically
unitized).

w.  Text of hard-copy documents shall be extracted using industry-
standard OCR technology. Text files shall not contain the redacted
portions of the documents.

x.  Responsive hard copy documents shall not be eliminated as duplicates
of responsive ESI.

### 8.  DOCUMENTS PROTECTED FROM DISCOVERY

The obligation to provide a log of privileged or work product materials
presumptively shall not apply to: (a) Attorney work product created by Outside Counsel
for the Parties regarding this litigation created after the filing of the first complaint;
(b) internal communications within Outside Counsel for the Parties regarding this
litigation created after the filing of the first complaint; (c) communications between
Outside Counsel and the party they represent in this litigation after the filing of the first
complaint. The parties agree to confer regarding other categories of information that may
be excluded from logging requirements.

The Parties agree that they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection within 30 days of a production. The parties will meet and confer to determine a different timeline and/or format for production of a log, if necessary.

For documents and ESI that have been withheld or redacted as privileged, the withholding party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), the document's Bates numbers or other unique identifier, and a description of the nature of the privileged or protected material in such a way that will enable other parties to assess the claim.

Documents redacted with a claim of privilege need not be included on privilege logs as long as: (a) the privilege claim is noted on the face of the redaction box; (b) the Redacted metadata field is populated and identifies that the document is redacted; and (c) the basis for the privilege redaction is apparent on the face of the remaining unredacted document.

The parties reserve the right to request additional information regarding individual documents on the privilege log.

a.  **No Waiver by Disclosure**. This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if a Producing Party discloses information in connection with the pending litigation, that the it thereafter claims to be protected by the attorney-client privilege and/or trial preparation material protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture any other proceeding in this or any other federal, state, arbitration, or of any claim of privilege or protection as trial preparation material that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter. This Section shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) with regard to Privileged Documents. The parties agree that, unless expressly provided for in this Order, Federal Rule of Evidence 502(b) shall not apply to any disputes regarding Privileged Documents that are produced in this litigation.

b.  **Notification Requirements; Best Efforts of Receiving Party**. A Producing Party must promptly notify the Receiving Part of Protected Information, in writing that it has disclosed the Protected Information without intending a waiver by the disclosure. The notification by the Producing Party shall include as specific an explanation as possible why the Protected Information is covered by the attorney-client privilege

and/or constitutes trial preparation material. Upon such notification, the Receiving Party must, unless it contests the claim of attorney-client privilege or protection as trial preparation material in accordance with paragraph (3), promptly (a) notify the Producing Party that it will make best efforts to identify and return, sequester or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has, and (b) provide a certification that it will cease further review, dissemination and use of the Protected Information. For purposes of this Order, Protected Information that has been stored on a source of electronically stored information that is not reasonably accessible, such as backup storage media, is sequestered. If such data is retrieved, the Receiving Party must promptly take steps to delete or sequester the restored Protected Information.

c. **Contesting Claims of Privilege or Protection as Trial Preparation Material**. If the Receiving Party contests the claim of attorney-client privilege or protection as trial preparation material, the Receiving Party must within 30 days of receipt of the notification referenced in Paragraph (2) move the Court for an Order finding that the material referenced in the notification does not constitute Protected Information. This Motion must be filed (with Court approval) under seal and cannot assert the fact or circumstance of the disclosure as a ground for determining that the material does not constitute Protected Information.

Pending resolution of the Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than as required by law to be served with a copy of the sealed Motion.

d. **Stipulated Time Periods**. The parties may stipulate to extend the time periods set forth in subparagraphs (2) and (3).

e. **Burden of Proving Privilege or Protection as Trial Preparation Material**. The Producing Party retains the burden of demonstrating the privileged or protected nature of the Protected Information upon challenge.

f. **In-Camera Review**. Nothing in this Order limits the right of any party to petition the Court for an in-camera review of the Protected Information.

g. **Voluntary and Subject Matter Waiver**. This Order does not preclude a party from voluntarily waiving the attorney-client privilege or trial preparation material protection. The provisions of Federal Rule of Evidence 502(a) apply when the Producing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

h. **Rule 502(b)(2)**. The failure to take reasonable steps to prevent the disclosure shall not give rise to a waiver of the privilege.

### 9.  MODIFICATIONS

Any practice or procedure set forth in this Order may be modified by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials. Should any party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

**IT IS SO ORDERED.**

**DATED:  January 5, 2026**

_____

**NANCY J. ROSENSTENGEL**
**United States District Judge**